The following constitutes
the order of the court. Signed April 25, 2014

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

Lee Andrew Cain and
Annette Jackson Cain,

Debtors./

Case No. 13-45030 MEH
Chapter 13

Hearing Held

Date:   April 11, 2014
Time:   1:30 p.m.
Place:  1300 Clay Street
        Courtroom 215
        Oakland, CA

**MEMORANDUM DECISION**

A hearing was held on April 11, 2014 in the above-captioned case to resolve issues in the case revolving around two Commercial Lease Agreements for adjacent properties used as Debtors' place of business (together, the "Lease Agreements") entered into by Lee Cain and Annette Cain (the "Debtors") and Haoson, LLC (the "Landlord"). Duong Tran appeared on behalf of Landlord and Robert Chang appeared on behalf of Debtors. The court heard the parties' arguments and took the matter under submission.

////

The court, having considered all relevant pleadings, admitted exhibits, witness testimony and the parties' arguments on the record, issues the following Memorandum Decision.

**I.   FACTS**

The parties entered into the Lease Agreements on March 15, 2011 for a lease term from March 15, 2011 to March 31, 2016. Under the agreements, the base rent for the premises was $2,740 per month from August 1, 2011 until December 30, 2011, and then was to increase to $4,110 per month from January 1, 2012 until March 31, 2016.

Debtors filed a Seventh Amended Chapter 13 Plan (the "Plan") on February 6, 2014, which provided for $2,740 regular monthly payments and $767.07 monthly cure payments on the leases. Landlord filed an Objection to Confirmation on February 25 and an Amended Motion for Relief from Stay, seeking relief to pursue an unlawful detainer action with respect to the property, on February 26.

The parties do not dispute that Landlord allowed Debtors to pay $2,740 per month rather than the agreed-upon $4,110 per month from August 2012 until December 2012. Landlord's July 8, 2013 Three-Day Notice to Pay Rent or Quit[1] indicates that the monthly rent owed from January 2013 until July 2013 was $2,740. Landlord's additional filings in the case indicate that the monthly rent owed from August, 2013 until December 2013 was also at the lower rate.[2]

---

[1] *Debtors' Exhibit 1.*

[2] *See Creditor Haoson, LLC's Objection to Confirmation of Chapter 13 Plan*, docket no. 93 at 4; *Declaration of Nguyet Vu*, docket no.
(continued...)

2

Debtors assert that the parties entered into an oral agreement to modify the Lease Agreements such that monthly payments would remain at $2,740 for the duration of the lease term (through March of 2016), as evidenced by Landlord's failure to bring a claim against Debtors. *Debtors' Opposition to Creditor Haoson, LLC's Objection to Confirmation* ("Debtors' Opposition"), docket no. 99 at 2. Debtors further argue that Landlord waived any right to the higher rent amount under the Lease Agreements by choosing not to enforce its rights. *Id*.

**II. DISCUSSION**

    **A. Amount Owed Under the Leases**

        **(1) Oral Modification**

Under California law, a written contract may be modified by an oral agreement to the extent that it is executed by the parties, or, unless the contract expressly provides otherwise, by an oral agreement between the parties supported by new consideration. Cal. Civ. Code § 1698(b),(c). In addition, any contract modification that falls within the statute of frauds must satisfy its requirements. *Id*.

Debtors have not alleged new consideration nor produced evidence establishing that the parties reached an oral agreement to modify the Lease Agreements for the duration of the term of the leases. Debtors argue that "the contract was modified sometime in 2011 to allow for the lower payment to remain in effect for the remainder of the

////

////

---

[2](...continued)
94 at 8.

3

lease term[3]," however Debtors' only evidence regarding a modification was Ms. Cain's testimony at the hearing that Landlord represented to her orally and through emails that the parties would enter into a new lease agreement in 2012 to reflect an ongoing monthly payment of $2,740. The court finds that this evidence alone is insufficient to establish that the parties orally modified the Lease Agreements.

In addition, the purported modification does not meet the requirements of the California statute of frauds. Under Cal. Civ. Code § 1624(a)(3)[4], an agreement to lease real property for a period longer than one year must be made in writing and signed by the party to be charged.

Here, the parties do not dispute that the lease terms extend out through March of 2016. Instead, Debtors argue that the statute of frauds does not apply because the Debtors could potentially satisfy the leases within one year by paying off the leases in full.

The focus of § 1624(a)(3), however, is not the overall agreement to lease, but rather on the duration or term of the lease. *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 877 (Ct. App. 1997). If the term of the lease exceeds one year, as the terms of the leases do in this case, the lease agreement will be subject to the statute of frauds. *Id.*

////
////

---

[3] *Debtors' Opposition,* docket no. 99 at 2.
[4] Hereinafter "§ 1624(a)."

4

Because the statute of frauds applies to the parties' purported modification and it is not in a writing signed by the party to be charged, it is an invalid modification to the Lease Agreements.

**(2) Waiver**

Debtors argue that Landlord's conduct constitutes a waiver of its right to enforce the $4,110 rent term of the Lease Agreements.

A party may, by its conduct, waive the right to recover for a breach of contract. However, in "continuing obligation cases, a waiver of a breach up to a certain time does not necessarily preclude the promisee from asserting a subsequent breach." *Bowman v. Santa Clara Cnty.*, 153 Cal. App. 2d 707, 713 (1957).

Landlord's conduct and its filings in the case indicate its assent to continue to accept the lower monthly payments of $2,740 from January 2013 until December 2013. Landlord's Three Day Notice to Pay Rent or Quit indicates that the monthly "rent owed" from August 2012 until July 2013 is $2,740. Landlord's proof of claim[5] also indicates that the monthly rent owed during that period is $2,740. With respect to post-petition payments up until January 2014, Landlord's additional filings indicate Landlord's assent to post-petition payments of the lower rent amount from September 2013 until December 2013.

Both Landlord's objection to plan confirmation and its amended motion for relief from stay indicate that post-petition rent owed for October 2013 through December 2013 is $2,740 per month. *See* fn 2.

////

---

[5] Proof of Claim no. 14-1.

5

Based on Landlord's proof of claim and the rent roll provided at the hearing as Landlord's Exhibit B (the "Rent Roll"), pre-petition rent owed from June 2012 through September 3, 2013 is $40,774[6] and the amount paid during this period was $11,023. Those documents are consistent with the court's finding that the monthly rent owed from July 2012 through December 2014 is $2,740. Applying the rent paid to the rent owed, Debtors' pre-petition default is $29,751.

Based on the court's finding that the monthly rent owed for October, November and December 2013 is $2,740 and the monthly rent owed going forward is $4,110, the total amount owed from September 4, 2013 through April 2014 is $27,126. Based on the Rent Roll, the amount paid during this period was $16,240. Applying the rent paid to the rent owed, Debtors' post-petition default is $10,886.

As for the monthly obligation from January 2014 and going forward, the language of the Lease Agreements is clear: Section 24 ("Waiver") states that "[n]o waiver by the parties hereto of any default as breach of any term, condition or covenant of this Lease shall be deemed a waiver of any subsequent default or breach of the same or any other term, condition, or covenant contained herein." While Landlord waived its right to the $4,110 monthly rent obligation up until January 2014, its waiver of prior amounts owed does not amount to a waiver of amounts owed in the future. Because Debtors provide no substantial evidence

---

[6] The case was filed on September 4, 2013 and the $2,740 pre-petition portion of the September 2013 rent is prorated accordingly. The remaining $2,466 is allocated to the post-petition arrears.

6

to support a contrary finding, the court finds that Debtors' monthly rent obligation under the Lease Agreements is $4,110 per month as of January 1, 2014.

Based on the foregoing, the court finds that Debtors' pre-petition default is $29,751; that Debtors' post-petition default is $10,886; and that the current monthly rent as of January 1, 2014 is $4,110.

**B.   Assumption of the Leases**

In order to assume the leases, Debtors must: 1) cure any existing default or provide adequate assurance of prompt cure of the default; 2) provide adequate assurance of prompt compensation for any monetary loss; and 3) provide adequate assurance of future performance of the contract.  11 U.S.C. § 365(b)(1)[7].

**(1)   Cure or Adequate Assurance of Prompt Cure**

As of the April 11 hearing, Debtors have not cured the outstanding $40,637 default on the leases.  Debtors argue that the Plan provides for prompt cure, however the Plan calls for cure payments over a 42 month period, well beyond the remaining term of the leases.

Courts have consistently held that a cure period of over two years is not "prompt" for purposes of § 365(b)(1). *See Matter of DiCamillo*, 206 B.R. 64, 72 (Bankr. D. N.J. 1997)(collecting cases).  Likewise, the court finds under the facts presented that a cure period that is beyond two years and beyond the remaining term of the loan does not satisfy this requirement.

////

---

[7] Hereinafter "§ 365(b)(1)."

**(2) Adequate Assurance of Prompt Compensation for Loss**

For the reasons stated above, Debtors have failed to provide adequate assurance that Landlord will be promptly compensated for any pecuniary loss resulting from their default.

**(3) Adequate Assurance of Future Performance**

Debtors' Plan is based on the assumption that Debtors will continue to make payments of $2,740 for the duration of the leases, which is $1,370 shy of the current monthly payment owed under the Lease Agreements. As such, and taking into consideration Debtors' sporadic payment history, the court finds that Debtors have not provided adequate assurance of future performance.

**C.  Relief from the Automatic Stay**

A final hearing on relief from stay will be held on April 30, 2014 at 11:30 a.m. to determine whether Debtors have provided Landlord adequate protection in light of the findings set forth in this Memorandum Decision.

**III. CONCLUSION**

For the above reasons, the court finds that the parties did not modify the Lease Agreements and that Debtors have not met the requirements of § 365(b)(1) to assume the lease. The court will enter an order contemporaneously herewith.

**END OF MEMORANDUM DECISION**

8

COURT SERVICE LIST

ECF Recipients